[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present action is an appeal by the owners of forty-two condominium units known collectively as Seaview Condominiums in the Town of Guilford. The condominium complex is composed of twelve Whitfield units, twelve Stanwich units and eighteen Putnam units. On September 10, 1990 the unit owners held a meeting in which they unanimously voted either by owners present or by proxies to appeal the assessments on their units to the next board of tax review. The appeals which would be heard by the board of tax review in February of 1991 for the list of October 1, 1990 related to the valuation on a grand list established on October 1, 1985. The Condominium Association and the unit owners agreed that the Association President, David Kent, would be the spokesman for all the owners before the board of tax review. Mr. Kent testified that he appeared before the board to appeal each of the forty-two assessments and verbally made it clear that he was there for the purpose of the appeal. He filled out all forms which the board asked him to fill out, swore to the forms as the agent of the owners, and stated his case for all of the units. He answered the board members questions and felt that the board members were somewhat sympathetic to his position. The town acted on the appeal on the merits and never raised the question of Mr. Kent's authority until the appeal was filed in this court. A recent decision by Judge Spear in Kucej v. Board of Tax Review of the Town of Trumbull, 10 Conn. L. Rpt. 5, 133 (November 8, 1993) makes it clear that a taxpayers failure to appear before a board of tax review to answer questions as required by Connecticut General Statute 12-113
does not deprive the Superior Court of jurisdiction to hear a wrongful assessment appeal pursuant to 12-118. More importantly, the association and its owners appear to have taken reasonable actions to appoint Mr. Kent as their agent to appear before the board and the board appears to have willingly treated him as the agent of the owners. CT Page 10480
Adequate evidence was presented which leads the court to find that each of the appealing owners is an owner affected by the assessment and consequently each owner is aggrieved as required by law.
It is the holding of the court that the appeal was properly taken and that the court should examine the testimony before it by the various appraisers to determine the fair market value of the affected condominiums on the grand list date of October 1, 1985. In arriving at its decision, the court relied upon numerous appraisal reports submitted on the owner's behalf by Phillip W. Ball Associates. The court further relied on the appraisal report submitted on the town's behalf prepared by Stephen D. Hazard.
The court also relied to some extent on the asking prices for Seaview Condominium Units as reflected in the multiple listing service booklet of the Shoreline Board of Realtors dated September 2, 1985. This booklet was admitted into evidence as plaintiff's Exhibit K. At trial, the town argued that asking prices may not be used for the purpose of establishing values. The court readily agrees that asking prices are of little assistance in attempting to determine whether the property is worth the price being asked. However, when a series of arms length asking prices are offered for the purpose of showing the upper limits of value, it is the opinion of the court that they are valid for that purpose. While the court recognizes that the mere fact that a property owner asked $200,000 for his condominium unit does not indicate that the unit is worth $200,000. The court agrees with the plaintiffs that when numerous asking prices are reviewed they have probative value in arriving at the fact that the units are not worth more than the asking price listed in the multiple listing brochure.
The court notes that there was a significant disparity between the market values testified to by Mr. Ball on behalf of the unit owners and the market values testified to by Mr. Hazard on behalf of the town. To a large extent Mr. Hazard took sales of Seaview units in years preceding 1985 and adjusted upward for inflation to arrive at his conclusion concerning values. He also made certain calculations based upon an income approach which the court found of little assistance in the instant case. While recognizing the validity of the income approach as an appraisal method, comparable sales would appear to be a truer test of value for these residential condominiums.
Unlike Mr. Hazard, Mr. Ball largely used values for sales in CT Page 10481 1985 and later. The discrepancy between the two appraisers appears to have been caused by Mr. Hazard's assumption that prices were rising when in fact condominiums in the Town of Guilford, or at least in the Seaview Condominium Complex, may well have been declining in value in the years 1984 through 1986 and later.
In an attempt to eliminate the effects of the uncertainty of the changing market, the court has used sales reported by either appraiser as well as some multiple listing offerings. The court has generally limited itself to transactions which occurred in the years 1984, 1985 or 1986. In all cases the court has attempted to exclude the value of garages from market value and it is the holding of the court that garages are worth $5,000 as agreed to by the parties. Those units which contain garages would have a fair market value of $5,000 in excess of the value determined by the court in this opinion.
The court holds that a Putnam unit, excluding the value of the garage, has a value of $193,000. After some rounding of figures the court arrived at that figure by considering the following transactions: Unit 29 (1/7/85) $205,000; unit 15 (4/16/85) $193,000; 29 Seaview (2/9/85) $190,000; 7 Seaview (2/9/85) $185,000.
The court holds that the value of a Stanwich unit excluding a garage is $140,000 rounded to the nearest thousand. In arriving at this figure the court considered the following transactions: unit 23 (2/27/84) $141,000; unit 3 (5/30/86) $139,000.
The court holds that the value of a Whitfield unit excluding the value of a garage and rounded to the nearest thousand is $126,000. In arriving at these figures the court considered the following transactions: 10 Seaview (2/9/85) guide 2 $122,000; 2 Seaview (2/9/85) $120,000; 9 Seaview guide 2 (2/9/85) $137,500; unit 21 (6/12/85) $144,000; unit 10 (4/8/86) $117,000; unit 9 (3/18/86) $114,000.
It should be clearly understood that in reciting sales prices and arriving at market values the court has in all cases attempted to reduce sales prices by the value of the garage if a garage was included in the sales price. It is the intention of the court that those units with garages will have their values increased by $5,000 before being adjusted to determine the assessed valuation. Accordingly, the court holds that the value of garages on Seaview Condominium Units on the grand list of October 1, 1990, October 1, CT Page 10482 1991 and October 1, 1992 are $5,000 regardless of the type of unit. The court further holds that the value of a Putnam unit on the grand list of October 1, 1990, the grand list of October 1, 1991 and the grand list of October 1, 1992 is $193,000; that the fair market value of a Stanwich unit on the respective grand lists is $140,000; and that the fair market value of a Whitfield unit on the respective grand lists is $126,000.
The court orders that the assessment made by the board of tax review be reduced in accordance with the foregoing decision and that the applicant shall be reimbursed by the Town of Guilford for any overpayment of taxes together with interest and costs or at the discretion of each applicant; each such applicant shall be granted a tax credit for such overpayment together with interest and costs. The amounts of the assessments as so found by the court and reduced shall be the assessed valuation of each such property on the grand list for succeeding years unless and until the assessor of the Town of Guilford finds the value of the applicants property has increased or decreased.
The court further awards an appraisal fee for Mr. Ball in the amount of $2,000 and a fee for testifying in the amount of $450. The court awards an appraisal fee for Mr. Lawler of $265 and $100 for testimony.
The court by,
Kevin E. Booth, Judge